******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MASHANTUCKET PEQUOT TRIBAL NATION *v.* FACTORY MUTUAL INSURANCE COMPANY
## (AC 45600)

Bright, C. J., and Alvord and Pellegrino, Js.

*Syllabus*

The plaintiff, a federally recognized Indian Tribe, owns and operates, inter alia, a casino and resort complex. The defendant insurance company issued the plaintiff an all risk insurance policy, which covered the plaintiff's listed properties against all risks of physical loss or damage and for business interruptions up to $1,655,000,000 per occurrence. These coverages were triggered by physical loss or damage to covered property; that threshold language was not defined in the policy. The policy also included coverage for certain specified events, including for a response to a communicable disease and communicable disease business interruption loss. The policy contained an exclusion to covered costs for contamination due to a virus. As a result of the COVID-19 pandemic, the plaintiff claimed that it suffered, inter alia, physical loss and damage to its locations and properties in excess of $76 million. Upon the defendant's denial of the plaintiff's claim, the plaintiff sought, inter alia, a declaratory judgment that the defendant was required to provide coverage for the losses that the plaintiff sustained as a result of its suspension of business operations during the COVID-19 pandemic. The plaintiff claimed that the presence of COVID-19 fell within several of the provisions within the policy and that the policy's exclusion for contamination by a virus did not apply. The plaintiff maintained that the virus could be spread in many ways, could remain viable for many days on objects, surfaces, and materials, and that physical alterations of its property as a result of the presence of COVID-19 rendered the property nonfunctional, unsafe, and unusable. In addition, the plaintiff alleged that it suffered business interruption losses due to the presence of COVID-19, as the plaintiff's businesses were required to shut down or limit their operations pursuant to orders from tribal and state governments and to mitigate its losses. The defendant filed a motion to strike the plaintiff's operative complaint, asserting that the relief the plaintiff sought was unavailable under the clear and unambiguous language of the policy and that the exclusion for contamination by a virus barred the plaintiff's claims. The trial court granted in part the defendant's motion to strike, concluding that, although the plaintiff purchased an all risk policy, the unambiguous language of the policy provided exclusions and limits for various specified damages. The trial court determined that COVID-19 was a virus, the virus was considered contamination, and, accordingly, contamination by a virus was not covered by the policy. The trial court found, however, that claims for costs under the provisions for communicable disease response and communicable disease business interruption losses were covered, although coverage was capped at $1 million under each of those provisions, and denied the motion to strike as to these claims. The trial court also declined to address whether alleged damage from COVID-19 constituted physical damage to, or loss of, property. On appeal to this court, the plaintiff claimed that it had sufficiently and specifically pleaded that COVID-19 physically altered its property, that the trial court improperly concluded that the exclusion for contamination by a virus applied to its claims for coverage, and that the policy expressly recognized the presence of a communicable disease as a physical loss or damage. *Held* that the trial court properly granted in part the defendant's motion to strike, that court having properly concluded that the contamination exclusion applied and defeated the plaintiff's claims for coverage under the property damage and business interruption loss provisions: the plaintiff's allegations in its operative complaint did not establish that COVID-19 caused physical loss or damage to its properties, and, therefore, the allegations were insufficient to trigger coverage under the policy for property damage

or business interruption losses, as the plaintiff failed to allege facts showing the manner in which COVID-19 caused a physical, tangible alteration to or resulted in the deprivation of property that rendered it physically unusable or inaccessible, and, instead, offered conclusory allegations that COVID-19 caused a risk of physical loss or damage and that the presence of COVID-19 constituted a risk of physical loss or damage; moreover, the trial court properly concluded that the unambiguous language of the contamination exclusion specifically excluded coverage for any cost resulting from the presence of COVID-19 from the physical loss or damage and business loss interruption provisions; furthermore, the plaintiff could not prevail on its claim that the actual presence of a communicable disease such as COVID-19 constituted physical loss or damage under the policy's communicable disease response provision, as that provision did not require physical loss or damage, was triggered only if a location has the actual, not suspected, presence of a communicable disease and access was limited by an officer of the plaintiff or a government agency regulating the disease's presence, and this coverage provided only for the reasonable and necessary costs for cleanup, removal, and disposal of the disease from the property; additionally, the plaintiff could not prevail on its claim that the issue of whether COVID-19 physically altered property could not be determined at the motion to strike phase of the litigation, as our Supreme Court and other courts have already determined, even at the pleading stage, that properties were not altered as a result of the COVID-19 pandemic, and the plaintiff in the present matter pleaded only conclusory allegations that COVID-19 caused physical, tangible alteration to property, but did not provide any specifics as to how the property purportedly was altered.

Argued October 10, 2023—officially released April 2, 2024

*Procedural History*

Action, inter alia, seeking a declaratory judgment determining the applicability of certain coverage provisions under an insurance policy issued by the defendant to the plaintiff, and for other relief, brought to the Superior Court in the judicial district of New London, where the matter was transferred to the judicial district of Hartford, Complex Litigation Docket; thereafter, the court, *Moukawsher, J.*, granted in part the defendant's motion to strike; subsequently, the parties filed a joint stipulation in which the plaintiff withdrew with prejudice its remaining claims; thereafter, the court, *Noble, J.*, granted the plaintiff's motion for judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Michael C. D'Agostino*, with whom, on the brief, was *Sergio F. Oehninger*, pro hac vice, for the appellant (plaintiff).

*Bryce L. Friedman*, pro hac vice, with whom were *Matthew C. Penny*, pro hac vice, and *Andraya Pulaski Brunau*, for the appellee (defendant).

*Opinion*

PELLEGRINO, J. The issue at the core of this appeal is, in the context of a dispute regarding insurance coverage for business losses suffered as a result of the COVID-19 pandemic, whether the operative complaint contained sufficient allegations to withstand a motion to strike pursuant to Practice Book § 10-39. The plaintiff, Mashantucket Pequot Tribal Nation, appeals from the judgment rendered in favor of the defendant, Factory Mutual Insurance Company, following the partial granting of its motion to strike and the subsequent withdrawal of the remaining claims set forth in the plaintiff's operative complaint. On appeal, the plaintiff claims that (1) the court improperly concluded that a policy exclusion for contamination caused by a virus applied to the majority of its claims for coverage and (2) our Supreme Court's decisions in *Connecticut Dermatology Group*, *PC* v. *Twin City Fire Ins. Co.*, 346 Conn. 33, 288 A.3d 187 (2023) (*CT Dermatology*), and *Hartford Fire Ins. Co.* v. *Moda*, *LLC*, 346 Conn. 64, 288 A.3d 206 (2023) (*Moda*), both of which were released subsequent to the trial court's decision in the present case, do not provide an alternative basis to affirm the trial court's granting of the motion to strike. We disagree with both of the plaintiff's claims and, accordingly, affirm the judgment of the court.

The following facts, as alleged in the first amended complaint (operative complaint), and procedural history are relevant to our resolution of this appeal. The plaintiff, a federally recognized Indian Tribe headquartered at a reservation located within the geographic boundaries of Connecticut, operates and has an interest in a number of businesses, including the Mashantucket Pequot Gaming Enterprise, doing business as Foxwoods Resort Casino, a resort and casino complex that includes multiple casinos, hotels, theaters and restaurants. The defendant, a Rhode Island insurance company licensed to write commercial property insurance in Connecticut, sold an "all risk" insurance policy (policy) to the plaintiff, which covers "[the plaintiff] and any subsidiary, and [the plaintiff's] interest in any partnership or joint venture in which [the plaintiff] has management control or ownership as now constituted or hereafter is acquired . . . ."[1] The term of this policy is from July 1, 2019, through July 1, 2020, and covers the plaintiff's listed property against all risks of (1) physical loss or damage and (2) business interruptions (time element loss)[2] up to $1,655,000,000 per occurrence. These primary coverages were triggered by physical loss or damage to covered property;[3] that threshold language, however, was not defined in the policy. The plaintiff paid millions of dollars in premiums to the defendant for this insurance policy.

The plaintiff claimed that it suffered direct physical loss and damage to locations and properties insured

under the policy, as well as time element loss, and other types of covered losses in excess of $76 million as a result of the "deadly and highly contagious" COVID-19 disease, which the World Health Organization declared to be a pandemic on March 11, 2020.[4] The plaintiff contended that "COVID-19 causes a physical, tangible alteration to property, and the presence of COVID-19 amounts to physical loss and damage to property." Specifically, the plaintiff maintained that COVID-19 can be spread in several ways, including from person-to-person via respiratory droplets, through airborne transmission, and by contact with objects or surfaces. The plaintiff also asserted that COVID-19 can remain viable for many days on objects, surfaces, or materials, including those used in the ordinary course of business by the plaintiff. The plaintiff claimed that physical alterations of its property as a result of the presence of COVID-19 rendered it nonfunctional, unsafe, or unusable.[5] Additionally, the plaintiff alleged that the presence of COVID-19 in the air rendered the property unusable, uninhabitable, and unfit for normal occupancy or use. As a result of the presence of COVID-19, the plaintiff's businesses shut down or limited their operations pursuant to orders from tribal and state governments and to mitigate its losses, and, therefore, the plaintiff sustained time element losses.

The all risk insurance policy that the plaintiff purchased from the defendant provided various types of coverages, including for the aforementioned physical loss or damage and time element loss, as well as additional coverages for certain specified events, such as the response to a communicable disease such as COVID-19. In other words, the policy included numerous coverage provisions, the majority of which are not mutually exclusive. The plaintiff alleged that the presence of COVID-19 fell within several of the coverages contained in the policy. The plaintiff also claimed that the policy's exclusion for contamination due to a virus did not apply. The plaintiff submitted a claim under the policy, which the defendant denied.[6]

In its operative complaint, the plaintiff sought a declaratory judgment[7] and also alleged claims for breach of contract,[8] common-law bad faith,[9] and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[10] In its prayer for relief, the plaintiff sought declaratory relief, monetary damages, interest, attorney's fees, and other relief the court deemed just and proper. The plaintiff attached a copy of the insurance policy to the complaint.[11]

On May 4, 2021, the defendant filed a motion to strike the operative complaint pursuant to Practice Book § 10-39, claiming that "the relief [the plaintiff] seeks is unavailable under the clear and unambiguous terms of the parties' insurance contract . . . ." In the memorandum of law in support of its motion to strike, the defen-

dant noted that the policy covered the property against all risks of physical loss or damage, subject to certain exclusions,[12] which, in turn, were subject to certain exceptions. "Thus, the policy provides coverage for physical loss or damage unless an exclusion applies, and an exclusion applies unless an exception to the exclusion is 'otherwise stated' in the policy."

Next, the defendant argued that the court should strike counts one and two of the operative complaint because the policy excluded contamination by a virus, and COVID-19 is caused by the Severe Acute Respiratory Syndrome Coronavirus 2, known as the SARS-CoV-2 virus. The defendant contended that the policy did not provide coverage for property damage or time element losses resulting from a virus, as stated in the contamination exclusion. Additionally, the defendant asserted that, because COVID-19 did not cause physical loss or damage to property, most of the coverages in the insurance policy did not apply. With respect to the additional coverage for the actual presence of a communicable disease, which did not require physical loss or damage to property, the defendant asserted that the plaintiff had failed to allege the actual presence of COVID-19 on its premises. As a result of its arguments regarding counts one and two of the amended complaint, the defendant claimed that counts three and four failed as well.

On June 16, 2021, the plaintiff filed a memorandum of law in opposition to the defendant's motion to strike. At the outset, it stated that, unlike other insurance companies, the defendant "issued a unique policy form to the [plaintiff] that *expressly* covers communicable disease as insured physical loss or damage." (Emphasis in original; internal quotation marks omitted.) Additionally, it explained that COVID-19 is not a virus but rather a communicable disease caused by SARS-CoV-2. Next, the plaintiff contended that it had pleaded the actual presence of COVID-19 at its business locations. The plaintiff then argued that the contamination exclusion contained in the policy did not exclude coverage for loss caused by a communicable disease. Finally, the plaintiff countered that it sufficiently had alleged claims for common-law bad faith and violations of CUTPA in counts three and four of the operative complaint.

On July 14, 2021, the defendant filed a reply memorandum of law in support of its motion to strike. Therein, the defendant repeated that (1) the contamination exclusion barred the plaintiff's claims for losses caused by COVID-19, (2) the plaintiff failed to plead sufficient facts establishing that COVID-19 tangibly altered the property as required by case law to meet the policy's threshold requirement of physical loss or damage for the property damage and time element loss coverages, (3) the plaintiff failed to allege the actual presence of COVID-19 and, therefore, the claim under the communicable disease coverage provision failed, and (4) counts

three and four of the operative complaint alleging common-law bad faith and CUTPA violations should be stricken because the complaint failed to establish that the plaintiff was entitled to coverage under the policy. Additionally, it emphasized that the operative complaint had referred to SARS-CoV-2, a virus, and COVID-19, a communicable disease, collectively as COVID-19.

On August 18, 2021, the court, *Moukawsher, J.*, issued a memorandum of decision granting, in part, the defendant's motion to strike. At the outset, the court explained that, although the plaintiff purchased an all risk insurance policy with approximately $1.6 billion in coverage, the language of the policy provided exclusions and limits for various specified damages. It also concluded that the policy language was unambiguous, and, therefore, the court would interpret the policy coverage as a matter of law. The court then stated: "After reading [the policy], any reasonable person would have to conclude that a virus is a contamination and contamination isn't covered. It means that . . . the policy assumes, unless otherwise provided for, that no costs due to a virus are covered—costs like those incurred when the Pequot casino was shuttered by government edict, lost business, and had to be cleaned up and recalibrated." The policy, however, contained two types of "extra" coverages; namely, for communicable disease response costs and communicable disease business interruption loss (communicable disease provisions).[13] These provisions were capped in the aggregate at $1 million per year. The court rejected the defendant's contention that the plaintiff had failed to plead the actual, rather than suspected, presence of a communicable disease, as required by the communicable disease provisions. Furthermore, the court expressly declined to address whether the damage from COVID-19 constituted physical damage to or loss of the property, the necessary predicate for property damage or time element coverages, or the issues of concurrent and indirect causation.

The court concluded that all four counts of the operative complaint survived the partial granting of the defendant's motion to strike, but that certain arguments had been resolved. "To the extent that counts one and two claim no limit bars or exclude the [plaintiff's] claims for coverage beyond the communicable disease provisions and their liability limits, the court strikes those allegations because they fail as a matter of law. To the extent that [it seeks] covered costs under the policy provisions for communicable disease response and [communicable disease business interruption loss], the motion to strike is denied. . . . Counts three and four of the complaint are for bad faith and unfair trade practices. [The defendant] moves to strike them because they are dependent on there being coverage, and [the defendant] says there isn't any coverage. Because the court has held [that] there is some coverage, [the defendant's] motion to strike these claims is granted and denied to

the same extent it is granted and denied as to counts one and two. . . . In short, what is left of the [plaintiff's] claim under the policy is for covered costs under the provisions granting coverage for communicable disease response and [communicable disease business interruption loss]. [The defendant's] liability under the policy is limited to: (1) $1 million in the aggregate during any policy year for communicable disease response, and (2) $1 million in the aggregate during any policy year for interruption by communicable disease." (Footnote omitted.)

On September 3, 2021, the plaintiff filed a motion seeking the entry of judgment consistent with the court's memorandum of decision granting, in part, the defendant's motion to strike, and a written determination to allow an immediate appeal pursuant to Practice Book § 61-4 (a). On June 2, 2022, the parties filed a joint stipulation in which the plaintiff withdrew, with prejudice, its claims that remained following the court's August 18, 2021 decision. That same day, the plaintiff also filed a motion for judgment pursuant to Practice Book § 10-44. On June 3, 2022, the court, *Noble, J.*, granted the plaintiff's motion and rendered judgment accordingly.[14]

The plaintiff filed the present appeal on June 22, 2022. Approximately one month later, this court, sua sponte, stayed the appeal pending the final disposition by our Supreme Court of two pending appeals, *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 33, and *Hartford Fire Ins. Co.* v. *Moda, LLC*, supra, 346 Conn. 64. On January 27, 2023, our Supreme Court issued its decisions in those appeals.

On appeal, the plaintiff claims that the court improperly granted the defendant's motion to strike. Specifically, the plaintiff argues that it sufficiently and specifically pleaded that COVID-19 physically altered its property and that the policy expressly recognized the presence of a communicable disease as a physical loss or damage. The defendant counters that the plain language of the policy, specifically, the contamination exclusion, expressly bars coverage for "any condition of property due to the actual or suspected presence of any . . . virus." (Internal quotation marks omitted.) The defendant further argues that, pursuant to our Supreme Court's decisions in *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 33, and *Hartford Fire Ins. Co.* v. *Moda, LLC*, supra, 346 Conn. 64, the alleged presence of COVID-19 does not constitute a physical loss or damage, the necessary trigger for coverage under this type of insurance policy. For these reasons, the defendant maintains that the decision of the trial court should be affirmed. We agree with the defendant.

We begin by setting forth our standard of review and the legal principles regarding the granting of a motion

to strike. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . [The court takes] the facts to be those alleged in the complaint . . . and [construes] the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citation omitted; internal quotation marks omitted.) *Plainville* v. *Almost Home Animal Rescue & Shelter, Inc.*, 182 Conn. App. 55, 63, 187 A.3d 1174 (2018); see also *Greenwald* v. *Van Handel*, 311 Conn. 370, 374–75, 88 A.3d 467 (2014); *Himmelstein* v. *Windsor*, 304 Conn. 298, 307, 39 A.3d 1065 (2012); see generally Practice Book § 10-39.[15] Our review of a trial's court decision to grant a motion to strike is plenary. *Stevens* v. *Khalily*, 220 Conn. App. 634, 645, 298 A.3d 1254, cert. denied, 348 Conn. 915, 303 A.3d 260 (2023); *A.C. Consulting, LLC* v. *Alexion Pharmaceuticals, Inc.*, 194 Conn. App. 316, 325, 220 A.3d 890 (2019). The legal conclusions contained in a complaint, however, are not deemed to be admitted by a court ruling on a motion to strike. *Hughes* v. *Board of Education*, 221 Conn. App. 325, 329–30, 300 A.3d 1209, cert. denied, 348 Conn. 922, 304 A.3d 147 (2023).

Next, we set forth the principles relevant to the interpretation of an insurance policy. "When construing an insurance policy, we look at the [policy] as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. . . . Insurance policies are interpreted based on the same rules that govern the interpretation of contracts. . . . In accordance with those rules, [t]he determinative question is the intent of the parties . . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one

reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured . . . ." (Internal quotation marks omitted.) *Stewart* v. *Old Republic National Title Ins. Co.*, 218 Conn. App. 226, 239–40, 291 A.3d 1051 (2023); see also *Jemiola* v. *Hartford Casualty Ins. Co.*, 335 Conn. 117, 128–29, 229 A.3d 84 (2019); *Liberty Ins. Corp.* v. *Johnson*, 222 Conn. App. 656, 665–66, 306 A.3d 1143 (2023). As a general matter, "[w]hile the insured bears the burden of proving coverage, the insurer bears the burden of proving that an exclusion to coverage applies." *Nationwide Mutal Ins. Co.* v. *Pasiak*, 327 Conn. 225, 239, 173 A.3d 888 (2017). Additionally, we note that, "[w]hen construing exclusion clauses, the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 333 Conn. 343, 365, 216 A.3d 629 (2019).

The specific language of the insurance policy between the parties in this case provided in relevant part: "This [p]olicy covers property, as described in this [p]olicy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this [p]olicy." The time element coverage provided: "This policy insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured: 1) to property described elsewhere in this [p]olicy and not otherwise excluded by this [p]olicy or otherwise limited in the TIME ELEMENT COVERAGES below . . . ." For these two primary coverages, the maximum limit of liability for an occurrence was $1,655,000,000, subject to certain provisions.

Additionally, the policy included the following contamination exclusion: "This [p]olicy excludes the following unless directly resulting from other physical damage not excluded by this [p]olicy: 1) contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual and not suspected presence of contaminant(s) directly results from other physical damage not excluded by this [p]olicy, then only physical damage caused by such contamination may be insured." (Emphasis omitted.) The policy set forth the following definitions. The term "contaminant" was defined as "anything that causes contamination" which, in turn, was defined as "*any condition of property due to the actual or suspected presence of* any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, *virus*, disease causing or illness causing agent, fungus, mold or mildew [or legionellosis]." (Emphasis added.)

The policy also provided for certain additional coverages,[16] including a communicable disease response[17] and interruption by communicable disease.[18] These two communicable disease provisions were subject to a $1 million sublimit, in the aggregate, during any policy year regardless of the number of locations, coverages or occurrences involved.[19] The policy defined "communicable disease" as "transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges . . . ."

It follows that, as the trial court explained, the policy the plaintiff purchased, like many insurance policies, begins with a broad promise to cover all risks, but then subjects and limits coverage with various exclusions. The policy also contains exceptions to the policy exclusions as well as additional coverage for certain specified situations, subject to financial limitations.[20] Guided by this approach, we will commence our analysis by determining whether the plaintiff's claims (1) fall within the grant of coverage for physical damage or loss, or time element loss, and (2) are subject to any exclusions to those coverages. On the basis of our review of the relevant policy language and case law, we conclude that the plaintiff's claims do not fall within the grant of coverage for physical loss or damage or time element loss, and, additionally, are subject to the contamination exclusion.[21]

As previously noted, the policy covers the property described therein against all risks of physical loss or damage.[22] The policy, however, does not define the phrase "physical loss or damage." Our Supreme Court interpreted this language in the context of commercial insurance policies in *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 67 A.3d 961 (2013) (*Capstone*). That case involved the construction of the Hilltop student housing complex (Hilltop project) at the University of Connecticut (UConn). Id., 763. The plaintiffs in that case served as the general contractor and project developer for the Hilltop project, while the defendant was the successor in interest to the insurer that issued a commercial general liability policy that insured the plaintiffs and their work on this project. Id., 763–64. Our Supreme Court concluded, inter alia, that defective work, standing alone, or repairs to that defective work, do not constitute property damage and was not, therefore, covered under the insurance policy. Id., 764.

In *Capstone*, UConn notified the plaintiffs of the alleged defects after discovering elevated levels of carbon monoxide in various areas three years after the completion of the Hilltop project. Id., 767–68. One of the plaintiffs notified the defendant and demanded that the defendant defend against UConn's claims. Id., 768. The defendant determined that UConn's claims were not covered under the policy: "As the liability at issue

arises out of [one of the plaintiffs'] own work, including its role as general contractor and heating and plumbing installation, there can be no coverage for this matter . . . under the policy." (Internal quotation marks omitted.) Id. Eventually, the plaintiffs and UConn reached a settlement. Id., 770. The plaintiffs filed separate actions against the defendant alleging breach of contract and bad faith; these actions were removed to federal court, which subsequently certified questions to our Supreme Court. Id., 770–71.

First, the court concluded that defective workmanship can give rise to an occurrence under a commercial general liability insurance policy. Id., 776. It then turned to the term "property damage," which was defined in the policy as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." (Internal quotation marks omitted.) Id., 776–77. In addressing whether the presence of carbon monoxide, an odorless gas, constituted "property damage," our Supreme Court concluded that it was not. Id., 782. Relying on the reasoning set forth in a decision from the New Hampshire Supreme Court,[23] it concluded that the gas "[c]aused no physical, tangible alteration to any property . . . ." (Internal quotation marks omitted.) Id., 782–83.

Our Supreme Court subsequently applied the *Capstone* reasoning in the context of COVID-19 in both *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 33, and *Hartford Fire Ins. Co.* v. *Moda, LLC*, supra, 346 Conn. 64. In the former, the court identified the dispositive issue as "whether a property insurance policy providing coverage for direct physical loss of or physical damage to covered property provides coverage for business income losses arising from the suspension of business operations during the COVID-19 pandemic." (Internal quotation marks omitted.) *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 36. In that case, three plaintiffs that owned and operated health care facilities at various locations in Connecticut suspended their business operations during the COVID-19 pandemic and suffered lost business income and additional expenses; id.; including daily sanitation and the erection of physical barriers for the protection of patients and staff. Id., 38–39. The plaintiffs filed claims against their respective insurance companies. Id., 36. The defendant insurance companies denied the claims on the basis that the coronavirus did not cause property damage. Id., 39. The plaintiffs filed actions seeking, inter alia, a declaratory judgment that the defendants were obligated to provide coverage. Id. In their answer, the defendants denied the substantive allegations in the plaintiffs' complaint and raised a special defense that the claims were excluded by a virus exclusion contained in the policy.[24] Id., 39–40.

Both the plaintiffs and the defendants moved for summary judgment. Id., 40. The defendants argued that no genuine issue of material fact existed as to whether the insurance policies covered the claimed losses because there was no direct physical loss or physical damage to any covered property. Id. Furthermore, the defendants claimed that, even if a covered loss had occurred, it was subject to the virus exclusion contained in the policies. Id. The trial court rendered summary judgment in favor of the defendants on the basis of the virus exclusion. Id.

On appeal, the plaintiffs contended that the trial court improperly rendered summary judgment in favor of the defendants on the basis of the virus exclusion. Id. The defendants disagreed with the plaintiffs' appellate claim; further, they argued "as an alternative ground for affirmance, that the insurance policies did not cover the losses because there was no direct physical loss or physical damage to any property covered by the policies." (Internal quotation marks omitted.) Id. Our Supreme Court agreed with the defendants' alternative ground of affirmance and determined, therefore, that it did not need to address whether the virus exclusion precluded coverage. Id., 40–41.

The court began its analysis with the relevant policy language of the insurance policies, stating: "Although this court has not previously construed this specific policy language, we considered the meaning of a similar policy provision in *Capstone Building Corp.* v. *American Motorist Ins. Co.*, [supra, 308 Conn. 760]. . . . We rejected the plaintiffs' claim in *Capstone* that this provision entitled them to coverage for the loss of the use of defectively installed chimneys, which resulted in the escape of carbon monoxide into the building, on the ground that the gas caused no physical, tangible alteration to any property, and, therefore, under the plain language of the policy provision, the loss of use of the defective chimneys, standing alone, did not constitute property damage . . . ."[25] (Citation omitted; internal quotation marks omitted.) *Connecticut Dermatology Group, PC* v. *Twin City Ins. Co.*, supra, 346 Conn. 43–44.

Next, our Supreme Court considered a decision from the United States Court of Appeals for the Second Circuit, *Farmington Village Dental Associates, LLC* v. *Cincinnati Ins. Co.*, Docket No. 21-2080-cv, 2022 WL 2062280, *1 (2d Cir. June 8, 2022), which extrapolated the reasoning from *Capstone* and "concluded that, under Connecticut law, a policy covering accidental physical loss or accidental physical damage to property did not cover a loss incurred as a result of the suspension of business operations during the COVID-19 pandemic because the loss was not physical, and the virus did not tangibly alter the property." (Internal quotation marks omitted.) *Connecticut Dermatology Group, PC*

v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 44. The court then emphasized that "[t]he overwhelming majority of federal and state courts construing language similar or identical to the language contained in the policies at issue in the present case have reached the same conclusion."[26] Id., 44–45.

The court also considered other language in the policy, specifically, the provision regarding the "period of restoration," which provided that the loss of business income was covered when the property was repaired, rebuilt, or replaced. Id., 49–50. "These terms strongly imply that a direct physical loss, unlike a loss resulting from the necessary suspension of business operations to avoid the transmission of a communicable disease, is one that involves a physical alteration of the property such that the property is susceptible to being restored to its original condition." (Internal quotation marks omitted.) Id., 50.

Ultimately, our Supreme Court concluded "that the plain meaning of the term direct physical loss of . . . [p]roperty does not include the suspension of business operations on a physically unaltered property in order to prevent the transmission of the coronavirus. Rather, in ordinary usage, *the phrase direct physical loss of . . . [p]roperty clearly and unambiguously means that there must be some physical, tangible alteration to or deprivation of the property that renders it physically unusable or inaccessible.*" (Emphasis added; internal quotation marks omitted.) Id., 51.

Finally, the court addressed the arguments the plaintiffs presented. Significantly, it concluded that there was nothing in the record to indicate that the plaintiffs' property had undergone a "physical transformation" as a result of the COVID-19 pandemic that transformed "ordinary business properties into potential viral incubators that were imminently dangerous to human beings." (Internal quotation marks omitted.) Id., 52. Our Supreme Court observed that, as a result of the COVID-19 pandemic, there was a change to governmental and societal expectations and behaviors that negatively impacted the plaintiffs' businesses. Id. Additionally, our Supreme Court explained that a loss of use of property was not the same as the loss of property. Id., 53–54. Additionally, the court rejected the plaintiffs' contention that the construction of physical barriers and the purchase of additional personal protective equipment were repairs to the property. Id., 55. "We conclude that, just as the properties were not physically altered in any way by the COVID-19 pandemic, the plaintiffs' activities designed to prevent the transmission of the coronavirus on the properties were not 'repairs' in any ordinary sense of the word." Id.

Furthermore, the court was not persuaded by the plaintiffs' reliance on cases that have held that contamination of property by harmful substances or bacteria

constitutes a direct physical loss. Id., 58. First, the court noted that the plaintiffs had not claimed an actual coronavirus contamination or that their business had been closed due to the actual presence of the virus. Id., 58–59. Second, "[i]n any event, even if the plaintiffs had claimed that their properties were actually contaminated by the coronavirus, we find persuasive the cases that have held that the virus is not the type of physical contaminant that creates the risk of a direct physical loss because, once a contaminated surface is cleaned or simply left alone for a few days, it no longer poses any physical threat to occupants."[27] Id., 59. On the basis of this reasoning, our Supreme Court affirmed the summary judgment rendered in favor of the defendants. Id., 64.

Our Supreme Court similarly affirmed the summary judgment rendered in favor of the insurance company in *Hartford Fire Ins. Co.* v. *Moda, LLC*, supra, 346 Conn. 67, in which it also considered whether business losses suffered during the COVID-19 pandemic were covered by insurance for direct physical loss of or direct physical damage to property. In that case, the defendants purchased two insurance policies from the plaintiff: a package policy, which covered direct physical loss of or direct physical damage to covered property, namely, a spring line of shoes sold to department stores and other retailers; and a marine policy that covered the shoes from direct physical loss or direct physical damage from any external cause, subject to certain exclusions, while they were in transit and storage. Id., 68–69. The plaintiff insurer moved for summary judgment, arguing that, under either policy, the defendants had not suffered a direct physical loss of or direct physical damage to property and that the virus exclusion applied with respect to the package policy. Id., 70. The trial court granted the plaintiff's motion for summary judgment, determining that the virus exclusion applied, and, in the case of the marine policy, coverage was limited to physical damage to the property itself under New York law. Id., 70–71.

On appeal, the court relied on the holding from *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 36–37, that, under nearly identical policy language, there must be some physical, tangible alteration to, or deprivation of property, rendering it physically unusable or inaccessible; mere loss of use or access was insufficient, and, therefore, the defendants' claims of loss were without merit. *Hartford Fire Ins. Co.* v. *Moda, LLC*, supra, 346 Conn. 72–73. "That claim fails as a matter of law because the losses . . . suffered did not result from any tangible physical alteration to [the] stock or real property. Rather, those losses resulted from a transformation in governmental and societal expectations and behavior that had a seriously negative impact on [the] businesses. . . . The plain language of the package policy does not provide coverage for such

losses." (Citation omitted; internal quotation marks omitted.) Id., 73. The court further explained that "[c]*ontamination with the SARS-CoV-2 virus, even if it could be proved, is not sufficient to establish that the shoes were physically lost or damaged within the meaning of the package policy.*" (Emphasis added.) Id., 74.

With respect to the marine policy, our Supreme Court applied the law of New York to conclude that "such language does not describe business income losses incurred as a result of COVID-19 related closures [when] the insured property itself was not alleged or shown to have suffered direct physical loss or physical damage." (Internal quotation marks omitted.) Id., 76. Ultimately, our Supreme Court determined that the defendants' losses were not covered by either insurance policy, and, therefore, the trial court properly rendered summary judgment in favor of the plaintiff. Id., 79.

Having reviewed the precedent from our Supreme Court regarding property insurance policies and claims of business income loss arising from the suspension of business operations due to COVID-19, we return to the specific policy language in the present case. As we previously have noted, the policy sold to the plaintiff by the defendant covered property from all risks of physical loss or damage, and time element losses, but the requisite predicate for this coverage was physical loss or damage to covered property. We acknowledge that this policy's language is not identical to that of the policies in *CT Dermatology* or *Moda.* See, e.g., *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 37 (defendants will pay for direct physical loss of or physical damage to covered property and actual loss of business income sustained due to necessary suspension of operations during period of restoration and for reasonable and necessary extra expenses incurred during period of restoration that it would not have incurred if there had been no direct physical loss or physical damage to covered property); *Hartford Fire Ins. Co.* v. *Moda, LLC*, supra, 346 Conn. 68–69 (package and marine policies covered direct physical loss of or direct physical damage to covered property and loss of business income incurred due to necessary interruption of business operations due to period of restoration due to direct physical loss of or direct physical damage). We conclude, however, that the physical loss or damage language in the present case is sufficiently similar to the language of the policies at issue in *CT Dermatology* and *Moda.* We emphasize, therefore, that, in order to obtain coverage, the plaintiff must allege facts showing "*some physical, tangible alteration to or deprivation of the property that renders it physically unusable or inaccessible.*" (Emphasis added.) *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 51.

In the operative complaint in the present case, the plaintiff alleged in a conclusory fashion that COVID-19 caused a physical, tangible alteration to property. The plaintiff, however, failed to allege facts showing the manner in which this alteration occurred. We note that, although the facts alleged in a complaint are deemed admitted for the purposes of ruling on a motion to strike, legal conclusions are not. *Seramonte Associates, LLC* v. *Hamden*, 202 Conn. App. 467, 481, 246 A.3d 513 (2021), aff'd, 345 Conn. 76, 282 A.3d 1253 (2022). Stated differently, "[a] motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Internal quotation marks omitted.) Id.; see *Bridgeport Harbour Place I, LLC* v. *Ganim*, 303 Conn. 205, 213, 32 A.3d 296 (2011); *Sempey* v. *Stamford Hospital*, 194 Conn. App. 505, 513, 221 A.3d 839 (2019); see also *Perez* v. *Carlevaro*, 158 Conn. App. 716, 726, 120 A.3d 1265 (2015) (legal conclusion pleaded in complaint disregarded if inconsistent with or unsupported by facts alleged). It is, therefore, insufficient for the plaintiff merely to assert in its complaint that a physical, tangible alteration to its property has occurred due to COVID-19.

The plaintiff further alleged that COVID-19 can remain viable on objects or surfaces for up to twenty-eight days. It claimed that the prospect of COVID-19 being present on the property "is a risk of direct physical loss or damage, and it causes physical loss or damage to property" and then reasserted that the presence of COVID-19 caused a physical, tangible alteration to the property. In several more instances, the plaintiff offered the conclusory allegation that COVID-19 caused a risk of physical loss or damage to property, or the presence of COVID-19 was a risk of physical loss or damage. Furthermore, the operative complaint baldly stated that COVID-19 caused the plaintiff to sustain time element loss as a direct result of physical loss and damage.[28]

Given our Supreme Court's reasoning in *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn 33, and *Hartford Fire Ins. Co.* v. *Moda, LLC*, supra, 346 Conn. 64, the allegations set forth in the plaintiff's operative complaint are insufficient to establish physical risk or loss, which is required to trigger coverage under the policy for property damage or time element loss. The plaintiffs have not sufficiently alleged that COVID-19 causes some physical, tangible alteration to or results in the deprivation of property that renders it physically unusable or inaccessible. See *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 51. Again, "use of property and property are not the same thing, and the loss of the former does not necessarily imply the loss of the latter." (Internal quotation marks omitted.) Id., 53. As our Supreme Court explained, the SARS-CoV-2 virus is not the type of physical contaminant that creates the risk of physical loss

because, once the contaminated surface is cleaned, or simply left alone for a few days, it no longer presents a threat to occupants. See id., 59.

In addition to the binding precedent from our Supreme Court,[29] we note that a substantial number of decisions from state and federal courts have concluded that the presence of COVID-19 does not constitute physical damage or loss to trigger coverage under insurance policies akin to the one in the present case. For example, in *10012 Holdings*, *Inc.* v. *Sentinel Ins. Co.*, *Ltd.*, 21 F.4th 216, 218–20 (2d Cir. 2021), the United States Court of Appeals for the Second Circuit considered whether the District Court, applying the law of New York, properly dismissed the plaintiff's claims for insurance coverage following the forced suspension of its business operations. The central issue on appeal was whether the policy provided coverage for these losses, even though the plaintiff had not alleged that its closure had resulted from physical damage to its property or adjoining property. Id., 220. Applying the reasoning from a New York state appellate court decision,[30] which required direct physical damage to property to trigger coverage, the Second Circuit concluded that the motion to dismiss properly had been granted. Id., 220–21. Additionally, the Second Circuit observed: "We are unaware of any contrary authority in New York that diverges from [this] holding . . . which state and federal courts in New York have (at either the motion to dismiss stage or on summary judgment) uniformly applied since the start of the COVID-19 pandemic to deny coverage under similar insurance provisions where insured property was not alleged or shown to have suffered direct physical loss or physical damages."[31] (Citations omitted.) Id., 221.

Cases from other jurisdictions also have reached the same conclusion with respect to this issue. For example, the United States Court of Appeals for the First Circuit recently addressed the issue of whether, under Massachusetts law, the plaintiff had failed to state a claim that the SARS-CoV-2 virus caused direct physical loss of or damage to property in *Lawrence General Hospital* v. *Continental Casualty Co.*, 90 F.4th 593 (1st Cir. 2024). The insurance policy in that case provided "broad coverage for direct physical loss of or damage to property." (Internal quotation marks omitted.) Id., 595–96. The plaintiff hospital alleged that it suffered physical loss of and damage to its property due to the continuous reintroduction of SARS-CoV-2 particles, which chemically bonded to surfaces, making them hard to detach. Id., 596.

The First Circuit considered a trilogy of cases[32] decided under Massachusetts state law to determine whether the hospital's allegations would survive a motion to dismiss for failure to state a claim under the Federal Rules of Civil Procedure. Id., 599. First, the court noted that property does not sustain physical loss or damage

unless (1) it needs to be actively repaired or undergo remediation measures to correct the claimed damage or (2) the business must be moved to a new location. Id. It further explained that direct physical loss of or damage to property "requires some distinct, demonstrable, physical alteration of the property . . . and of course property cannot repair itself. . . . By contrast, the [e]vanescent presence of a harmful airborne substance that will quickly dissipate on its own, or surface-level contamination that can be removed by simple cleaning, does not physically alter or affect property." (Citations omitted; internal quotation marks omitted.) Id., 600. The court emphasized that the dissipation of the virus on its own and the removal of surface level contamination by simply cleaning supported the conclusion that the virus did not cause property damage, despite more detailed allegations in those other cases. Id. Ultimately, the First Circuit, relying on the facts that (1) direct physical loss of or damage to property exists only if a party must take active efforts to repair it and SARS-CoV-2 particles dissipate or become noninfectious within seven to twenty-eight days, effectively resulting in the "repair" of any "damage" to the property without intervention, (2) the presence of the virus was distinguishable from other contaminants such as ammonia and gasoline, and (3) "the clear consensus of courts throughout the country, which cuts against [the hospital] and demonstrates the flaws in its arguments," concluded that the District Court properly had granted the motion to dismiss filed by the defendant.[33] Id., 601–602.

In its efforts to distinguish the present case from the binding precedent of our Supreme Court, as well as the reasoning of the legion of federal and state cases, the plaintiff asserts that the insurance policy at issue here provides that the presence of a communicable disease at a covered property constitutes a physical loss or damage that is insured.[34] Specifically, the plaintiff points to the first line of the "Additional Coverages" section of the policy, which states: "This [p]olicy includes the following [a]dditional [c]overages for *insured physical loss or damage*." (Emphasis added.) One such additional coverage is the communicable disease response. The plaintiff argues, therefore, that given this prefatory language, the presence of a communicable disease constitutes insured physical loss or damage under the language of the policy.

We disagree with the plaintiff's attempt to classify the actual presence of a communicable disease as a physical loss or damage under the policy language. The communicable disease response coverage extension does not require physical loss or damage. That specific section of the policy is triggered if a location owned, leased or rented by the plaintiff has the actual, not suspected, presence of a communicable disease and access to such location is limited, restricted, or prohibited by either an order of an officer of the plaintiff

or an authorized governmental agency regulating the actual presence of a communicable disease. Furthermore, this extension covers only reasonable and necessary costs for the cleanup, removal, and disposal of the actual presence of a communicable disease from insured property and the actual costs of fees for a public relations service or the use of employees for reputation management. On the basis of the entirety of the policy language,[35] including the communicable disease provisions that provide coverage distinct from the property damage and time element coverages, we are not persuaded by the plaintiff's efforts to establish that, under this policy, the actual presence of a communicable disease constitutes physical loss or damage. Simply stated, we agree with the defendant that "disease outbreaks are a different sort of risk than physical loss or damage." See, e.g., *Froedtert Health, Inc.* v. *Factory Mutual Ins. Co.*, 620 F. Supp. 3d 811, 816–17 (E.D. Wis. 2022) (prefatory language in communicable disease response extension of insurance policy, without more, did not plausibly suggest that parties had agreed that communicable disease such as COVID-19, caused physical loss or damage).

Next, the plaintiff argues that the issue of whether COVID-19 physically alters property cannot be determined at the motion to strike phase of the litigation. We disagree. First, in *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 52, our Supreme Court, albeit in the context of a motion for summary judgment,[36] determined that the properties in that case were not altered as a result of the COVID-19 pandemic. Specifically, it explained that this pandemic caused a transformation in governmental and societal expectations and behaviors that negatively impacted business in a substantial manner; in other words, the "property did not change . . . [t]he world around it did." (Internal quotation marks omitted.) Id. Additionally, our Supreme Court explained that, "[*i*]*n any event, even if the plaintiffs had claimed that their properties were actually contaminated by the coronavirus*, we find persuasive the cases that have held that the virus is not the type of physical contamination that creates the risk of a direct physical loss because, once a contaminated surface is cleaned or simply left alone for a few days, it no longer poses any physical threat to occupants." (Emphasis added.) Id., 59. Similarly, in *Hartford Fire Ins. Co.* v. *Moda, LLC*, supra, 346 Conn. 74, the court wrote: "*Contamination with the SARS-CoV-2 virus, even if it could be proved, is not sufficient to establish that the shoes were physically lost or damaged within the meaning of the package policy*." (Emphasis added.) Given this language, we conclude that the holdings and reasoning set forth in these cases apply to the present appeal, despite the different procedural contexts.

Second, courts, even at the pleading stage have con-

cluded that COVID-19 does not physically alter property. See *Dr. Jeffrey Milton, DDS, Inc.* v. *Hartford Casualty Ins. Co.*, 588 F. Supp. 3d 266, 277 (D. Conn. 2022); *Connecticut Children's Medical Center* v. *Continental Casualty Co.*, 581 F. Supp. 3d 385, 391–93 (D. Conn. 2022), aff'd, United States Court of Appeals, Docket No. 22-322 (2d Cir. April 17, 2023); *Cosmetic Laser, Inc.* v. *Twin City Fire Ins. Co.*, 554 F. Supp. 3d 389, 407 (D. Conn. 2021).

Third, we note that in its complaint the plaintiff pleaded only conclusory allegations that COVID-19 causes a physical, tangible alteration to property and listed several types of property thereby affected but did not provide any specifics as to how the property purportedly was altered. See, e.g., *Wynn Resorts, Ltd.* v. *Factory Mutual Ins. Co.*, United States District Court, Docket No. 2:21-cv-01230 (CDS-EJY) 2023 WL 5319772, *3 (D. Nev. August 10, 2023) (complaint failed to specifically identify what physical loss or damage was caused by respiratory droplets or how virus caused physical alteration of property). This type of legal conclusion is insufficient to state a claim under our law. "A [motion to strike] . . . does not admit legal conclusions." (Internal quotation marks omitted.) *Desmond* v. *Yale-New Haven Hospital, Inc.*, 212 Conn. App. 274, 284, 275 A.3d 735, cert. denied, 343 Conn. 931, 276 A.3d 433 (2022). We conclude, therefore, that the plaintiff's efforts to distinguish *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 33, and *Hartford Fire Ins. Co.* v. *Moda, LLC*, supra, 346 Conn. 66, are unavailing and that, pursuant to the reasoning set forth in those cases, it was proper for the court to strike the counts in the plaintiff's operative complaint.

Additionally, we agree with the reasoning set forth in the trial court's memorandum of decision regarding the applicability of the contamination exclusion. As the court observed, "[c]osts caused by a virus are the very thing the policy does not cover by virtue of the contamination exclusion. Any argument that simply brings you back to costs caused by the virus brings you back to the costs that are expressly excluded. By definition, damage from the virus cannot be directly resulting from other physical damage not excluded by this policy." (Emphasis omitted; internal quotation marks omitted.) The trial court's ultimate determination to grant, in part, the defendant's motion to strike rested on this reasoning regarding the contamination exclusion.

The relevant language of the policy provides: "This [p]olicy excludes the following unless directly resulting from other physical damage not excluded by this [p]olicy: 1) contamination, and any cost due to contamination, including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly

results from other physical damage not excluded by this [p]olicy, then only physical damage caused by such contamination may be insured." (Emphasis omitted.) The policy defines contamination as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." On the basis of this plain language, therefore, it is clear that the policy specifically excludes coverage for any cost for the condition of property due to the actual or suspected presence of a virus such as SARS-CoV-2, unless it directly resulted from other physical damage not excluded.

We are mindful that, "[i]n an insurance policy, an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed." (Internal quotation marks omitted.) *Viking Construction, Inc.* v. *777 Residential, LLC*, 190 Conn. App. 245, 255, 210 A.3d 654, cert. denied, 333 Conn. 904, 214 A.3d 381 (2019). Such clauses are valid, as parties to an insurance contract have the right to qualify or limit the liability of the insurer in any manner that remains consistent with our law and does not violate public policy. *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 588, 573 A.2d 699 (1990).

The policy in the present case contains clear and unambiguous language that excludes costs resulting from the SARS-CoV-2 virus from the physical loss or damage and time element coverages. Numerous federal and state cases have relied upon the similar policy language to reach this conclusion.[37] As noted by Judge Dooley in *One40 Beauty Lounge, LLC* v. *Sentinel Ins. Co.*, Docket No. 3:20-CV-00643 (KAD), 2021 WL 5206387, *2 (D. Conn. November 9, 2021), appeal withdrawn, United States Court of Appeals, Docket No. 21-3007 (2d Cir. April 25, 2022), "[t]he [c]ourt does not write on a blank slate. Indeed, numerous courts have examined identical policy provisions and determined the [v]irus [e]xclusion is unambiguous and applies to claims arising out of losses caused by the COVID-19 virus."[38]

The plaintiff, however, argues that the contamination exclusion does not apply to a communicable disease, such as COVID-19. As we have noted in this opinion, contamination is defined by the policy as any condition of property due to the actual or suspected presence of any foreign substance including, inter alia, bacteria, a virus, or a disease or illness causing agent. The plaintiff argues that a communicable disease, defined by the policy as a disease transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges or legionellosis, is not a contaminant. It further claims that COVID-19 is a communicable disease, and it reasserts the contentions that the policy treats it as physical damage to the prop-

erty and, therefore, the contamination exception does not apply. This argument, however, is plagued with several flaws.

First, the plaintiff's attempts to draw a bright-line distinction between the virus SARS-CoV-2 and the communicable disease COVID-19 are betrayed by the allegations in the operative complaint in which the plaintiff inextricably intertwined the two.[39] Specifically, the plaintiff alleged that "SARS-CoV-2 causes COVID-19, a disease that attacks the respiratory system and causes other harm to humans. *SARS-CoV-2 and COVID-19 are collectively referred to in this complaint as COVID-19.*" (Emphasis added.) Second, we already have rejected the plaintiff's claim that a communicable disease such as COVID-19, under the language of this policy, constitutes a physical loss or damage to covered property. The plaintiff's reliance on the language that the contamination exclusion does not apply if the contamination directly results from other physical damage not excluded is, therefore, unfounded. Third, in considering the policy language as a whole, it is clear that the definition of communicable disease is to determine the applicability of the communicable disease provisions, and their corresponding sublimit of $1 million, while the contamination exclusion, and the definition of contaminant, is used to determine whether a claim is generally excluded from the property damage and time element coverages.[40] For these reasons, we conclude that the court properly concluded that the contamination exclusion in the present case applied and defeated the plaintiff's claims for coverage under the property damage and time element coverages. For the reasons set forth herein, we conclude that the court properly granted the defendant's motion to strike.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The policy states that it is governed by the laws of Connecticut.

[2] The policy states that it insures against time element loss directly resulting from physical loss or damage of the type insured "1) to property described elsewhere in this [p]olicy and not otherwise excluded by this [p]olicy or otherwise limited in the TIME ELEMENT COVERAGES below; 2) used by the [plaintiff], or for which the [plaintiff] has contracted use; 3) while located as described in the INSURANCE PROVIDED provision or within 1,000 feet/300 metres thereof, or as described in the TEMPORARY REMOVAL OF PROPERTY provision; or 4) while in transit as provided by this [p]olicy, and 5) during the [p]eriods of [l]iability described in this section, provided such loss or damage is not at a contingent time element location." (Emphasis omitted.)

We note that the Supreme Court of Maryland, in interpreting a nearly identical insurance policy issued by the defendant to a different insured, explained that "time element coverage is sometimes referred to as business interruption or business loss coverage." *Tapestry, Inc.* v. *Factory Mutual Ins. Co.*, 482 Md. 223, 233 n.6, 286 A.3d 1044 (2022); see also *Schleicher & Stebbins Hotels, LLC* v. *Starr Surplus Lines Ins. Co.*, 175 N.H. 744, 750–51, 302 A.3d 67 (2023) (time element coverage protects against consequences of loss, not damage to property itself).

[3] See, e.g., *Yale University* v. *Cigna Ins. Co.*, 224 F. Supp. 2d 402, 412 (D. Conn. 2002) (property insurance coverage is triggered by threshold concept of injury to insured property, frequently physical loss or damage); see also *Procaccianti Cos.* v. *Zurich American Ins. Co.*, Docket No. C.A.

20-512 (WES), 2023 WL 3536233, *2 (D. R.I. May 18, 2023) (to obtain coverage, plaintiffs required to demonstrate they suffered direct physical loss or damage to property).

[4] A recent Superior Court decision noted: "COVID-19 (coronavirus disease 2019) is a disease caused by a virus named SARS-CoV-2. It can be very contagious and spreads quickly. Over one million people have died from COVID-19 in the United States. COVID-19 most often causes respiratory symptoms that can feel much like a cold, the flu, or pneumonia. COVID-19 may attack more than your lungs and respiratory system. Other parts of your body may also be affected by the disease. Centers for Disease Control and Prevention, About Covid-19, (last modified July 10, 2023), available online at https://www.cdc.gov/coronavirus/2019-ncov/your-health/about-covid-19/basics-covid-19.html (last visited July 25, 2023)." (Internal quotation marks omitted.) *American Rag Cie, LLC* v. *Hartford Fire Ins. Co.*, Superior Court, judicial district of Hartford, Complex Litigation Docket No. X07-CV-22-6153983-S (August 1, 2023); see also *Manginelli* v. *Regency House of Wallingford, Inc.*, 347 Conn. 581, 594 n.7, 298 A.3d 263 (2023) (summarizing events at beginning of COVID-19 pandemic).

[5] Specifically, the plaintiff alleged the following: "The physical alteration, damage, and impairment described herein includes, but is not limited to, damage to:

"a. In the restaurants: cooking equipment and appliances, storage equipment, signs, menus, ovens, microwaves, refrigerators, freezers, ice machines, napkins, utensils, measuring cups and spoons, utensils, plates, cups, saucers, scales, thermometers, timers, aprons, soda dispensers, bar, glasses, bottles of alcohol, and containers, among other items.

"b. In the retail outlets: retail merchandise, signs, shelves, displays, counters, clothes hangers, boxes, packaging, and bags, among other items.

"c. In the casinos: tables, chairs, lights, displays, cards, chips, dice, cards, cups, containers, slot machines, games, screens, handles, and money, among other items.

"d. In the spas: tables, chairs, bottles, packaging, curtains, showers, tubs, cushions, blankets, pillows, towels, linens, cups, glasses, coolers, pitchers, and trays, among other items.

"e. In the hotels: beds, linens, key cards, remotes, handles, tables, desks, chairs, lamps, switches, curtains, blinds, cords, luggage racks, irons, ironing boards, shelves, toilet paper, paper towels, cups, soap boxes, shampoo bottles, conditioner bottles, lotion bottles, bells, desks, signs, pillows, pens, paper, cleaning supplies, elevators, bell carts, housekeeping carts, housekeeping supplies, mops, brooms, bottles, rags, and clothes, among other items.

"f. At all locations: lighting fixtures, cash registers, computers, tables, chairs, couches, stools, curtains, blinds, doors, door handles, carts, countertops, display cases, shelving, uniforms, floors, windows, fans, mirrors, decorative items, pictures, frames, sinks, faucets, faucet handles, soap dispensers, papers towels, paper towel holders, toilets, urinals, and trash cans, among other items."

[6] The plaintiff alleged that the defendant "denied or effectively denied coverage for that claim and did so in bad faith based on apparent systematic company practices designed to avoid or minimize payments for covered COVID-19 claims."

[7] Specifically, the plaintiff requested "a declaration from the court that: (a) the various coverage provisions identified herein are triggered by the [plaintiff's] claims; (b) the policy covers the [plaintiff's] claims; (c) the [plaintiff] sustained direct physical loss or damage from a covered cause of loss under this policy; (d) [the defendant] waived or is estopped from asserting its positions, as described above, to bar or limit coverage for the [plaintiff's] claims; (e) no exclusion applies to bar or limit coverage for the [plaintiff's] claims; and (f) granting any other declaratory relief useful to resolving the dispute between the parties."

[8] The plaintiff alleged that it had "complied with all applicable policy provisions and any other requirements; or, [the defendant] waived those provisions or any such requirements or is estopped from asserting any purported noncompliance with those provisions or any such requirements. . . . [The defendant] breached the policy by improperly denying coverage to the [plaintiff] or otherwise repudiating [the defendant's] obligation to cover the [plaintiff's] losses and expenses as expressly required under the policy."

[9] The plaintiff alleged that the defendant acted in bad faith in its refusal to provide coverage and in its handling of the plaintiff's claims. Additionally, it asserted that the defendant "had a dishonest purpose, sinister motive, or

malicious intent."

[10] The plaintiff alleged, inter alia, that the defendant had engaged in unfair or deceptive acts by engaging in unfair practices pursuant to the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-816 et seq.

[11] "A complaint includes all exhibits attached thereto. *Streicher* v. *Resch*, 20 Conn. App. 714, 716, 570 A.2d 230 (1990); Practice Book § 10-29." *Dlugokecki* v. *Vieira*, 98 Conn. App. 252, 258 n.3, 907 A.2d 1269, cert. denied, 280 Conn. 951, 912 A.2d 483 (2006).

[12] "Provisions in insurance policies excepting particular losses from the coverage thereof are ordinarily valid, for the parties to a contract of insurance have the right to limit or qualify the extent of the insurer's liability in any manner not inconsistent with statutory forms or provisions or contrary to public policy. . . . The reason for or purpose of an exclusion clause in a policy is to eliminate from coverage specified losses . . . which except for the exclusion clause would remain under the coverage. . . . In an insurance policy, an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed. . . . [T]he word exclusion signifies . . . circumstances in which the insurance company will not assume liability for a specific risk or hazard that otherwise would be included within the general scope of the policy." (Citations omitted; internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 588–89, 573 A.2d 699 (1990); see also *Viking Construction, Inc.* v. *777 Residential, LLC*, 190 Conn. App. 245, 255, 210 A.3d 654, cert. denied, 333 Conn. 904, 214 A.3d 381 (2019).

[13] We note that the United States Court of Appeals for the Tenth Circuit recently observed: "Just because the policy excludes all-risk and business-interruption coverage for viruses like COVID-19 does not mean it cannot also provide additional, limited coverage under separate provisions." *Monarch Casino & Resort, Inc.* v. *Affiliated FM Ins. Co.*, 85 F.4th 1034, 1041 (10th Cir. 2023).

[14] "As a general rule, [a]fter a court has granted a motion to strike, the plaintiff may either amend his pleading [pursuant to Practice Book § 10-44] or, on the rendering of judgment, file an appeal. . . . The choices are mutually exclusive [as] [t]he filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading." (Internal quotation marks omitted.) *Lavette* v. *Stanley Black & Decker, Inc.*, 213 Conn. App. 463, 469 n.6, 278 A.3d 1072 (2022); see also *Tunick* v. *Tunick*, 217 Conn. App. 106, 111 n.6, 287 A.3d 1132 (2022).

[15] Practice Book § 10-39 (a) provides in relevant part: "A motion to strike shall be used whenever any party wishes to contest: (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . ."

[16] The policy contains other additional sublimits of liability for events such as damage to vegetation of a golf course, nonphysical damage to computer systems, data, programs or software, earth movement, flood, land and water contaminant cleanup, removal or disposal.

[17] The communicable disease response coverage provided: "If a location owned, leased, or rented by the [plaintiff] had the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by: 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or 2) a decision of an [o]fficer of the [plaintiff] as a result of the actual not suspected presence of communicable disease, this [p]olicy covers the reasonable and necessary costs incurred by the [plaintiff] at such location with the actual not suspected presence of communicable disease for the: 1) cleanup, removal and disposal of the actual not suspected presence of communicable diseases from insured property; and 2) actual costs of fees payable to public relations services or actual costs of using the [plaintiff's] employees for reputation management resulting from the actual not suspected presence of communicable diseases on insured property. This [a]dditional [c]overage will apply when access to such location is limited, restricted or prohibited in excess of 48 hours. This [a]dditional [c]overage does not cover any costs incurred due to any law or ordinance with which the [plaintiff] was legally obligated to comply prior to the actual not suspected presence of communicable disease." (Emphasis omitted.)

[18] The interruption by communicable disease coverage provided in relevant part: "If a location owned, leased or rented by the [plaintiff] has the actual not suspected presence of communicable disease and access to such location

is limited, restricted or prohibited by: 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or 2) a decision of an [o]fficer of the [plaintiff] as a result of the actual not suspected presence of communicable disease, this [p]olicy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the [plaintiff] during the PERIOD OF LIABILITY at such location with the actual not suspected presence of communicable disease." (Emphasis omitted.)

[19] At oral argument before this court, counsel for defendant represented that the plaintiff had been paid $1 million pursuant to the communicable disease response coverage.

[20] See, e.g., *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 773–74, 67 A.3d 961 (2013) ("The commercial general liability policy is a standard form developed by the Insurance Services Office, Inc., and has been used throughout the United States since 1940. . . . It begins with a broad grant of coverage in the insuring agreement, followed by a series of exclusions (and exceptions to the exclusions) that define the contours of coverage. Accordingly, we begin our analysis with the initial grant of coverage in the insuring agreement and then consider the effect of the exceptions and exclusions to the policy's coverage." (Citation omitted; footnote omitted; internal quotation marks omitted.)).

[21] As previously set forth in this opinion, the trial court expressly declined to address whether the damage from COVID-19 constitutes physical damage to the property to trigger the physical loss or damage or time element coverages. Unlike the trial court, we have the benefit of our Supreme Court's decisions in *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 33, and *Hartford Fire Ins. Co.* v. *Moda, LLC*, supra, 346 Conn. 64. Furthermore, the parties have briefed and argued on appeal whether the physical loss or damage or time element coverages were triggered in light of those recent Supreme Court decisions. We will, therefore, apply the reasoning and conclusions from those cases as part of our resolution of the present appeal. "It is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." *Barbara* v. *Colonial Surety Co.*, 221 Conn. App. 337, 380, 301 A.3d 535, cert. denied sub nom. *Colonial Surety Co.* v. *Phoenix Contracting Group*, 348 Conn. 924, 304 A.3d 443 (2023); see also *Stevens* v. *Khalily*, 220 Conn. App. 634, 644, 298 A.3d 1254, cert. denied, 348 Conn. 915, 303 A.3d 260 (2023).

[22] Although the policy does not specifically include the term "direct" with regard to "physical loss or damage," we note that it excludes "indirect or remote loss or damage."

[23] *Concord General Mutual Ins. Co.* v. *Green & Co. Building & Development Corp.*, 160 N.H. 690, 694, 8 A.3d 24 (2010).

[24] Specifically, the policy excluded "loss or damage caused directly or indirectly by . . . [the] [p]resence, growth, proliferation, spread or any activity of fungi, wet rot, dry rot, bacteria or virus." (Internal quotation marks omitted.) *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 40.

[25] The plaintiffs in *CT Dermatology* contended that any reliance on *Capstone Building Corp.* v. *American Motorist Ins. Co.*, supra, 308 Conn. 760, was misplaced, as that case involved a claim for property damage, while they had alleged the physical loss of property. *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 45 n.10. In rejecting the effort to distinguish *Capstone*, our Supreme Court explained: "Although we agree that our decision in *Capstone* is not directly on point, it does provide some insight into the meaning of the term 'physical,' as applied to claims involving the loss of or damage to property. In any event, even if the plaintiffs were correct that *Capstone* provides no insight into the meaning of 'direct physical loss,' as used in their policies, that would not change our conclusion, based on the other reasons stated herein, that the phrase does not include losses resulting from the suspension of business operations during the COVID-19 pandemic." (Emphasis omitted.) Id.

[26] See *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 46–49 nn.11 and 12 (collecting federal and state cases).

[27] See *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 60 n.24 (collecting federal and state cases distinguishing coronavirus from other substances such as radiation, chemical dust, gas, ammonia, and asbestos).

[28] We note that numerous cases have recognized that, while COVID-19 harms people, the insurance policies and coverages at issue, like in the present case, apply to property. "The fact that the property could become a vector for transmission of a virus that poses a risk to human health due

to the presence of SARS-CoV-2 in the air at the property is not relevant to the question of whether there has been physical loss of or damage to property, because the policies insure property, not people. [T]he danger of the virus is to people in close proximity to one another, not to the real property itself. . . . As one court observed, SARS-CoV-2 presents a mortal hazard to humans, but little or none to buildings which remain intact and available for use once the human occupants no longer present a health risk to one another. . . . [Stated differently] [t]he virus harms human beings, not property." (Citations omitted; internal quotation marks omitted.) *Schleicher & Stebbins Hotels*, *LLC* v. *Starr Surplus Lines Ins. Co.*, 175 N.H. 744, 756, 302 A.3d 67 (2023); see *Stetson Real Estate*, *LLC* v. *Sentinel Ins. Co.*, *Ltd.*, Docket No. 22-1748, 2023 WL 6563870, *2 (2d Cir. October 10, 2023) ("COVID-19 virus injures people, not property" (internal quotation marks omitted)); *Procaccianti Cos.* v. *Zurich American Ins. Co.*, Docket No. C.A. 20-512 (WES), 2023 WL 3536233, *3 (D. R.I. May 18, 2023) (whether doorknob is contaminated with COVID-19 and poses risk to human health is absolutely irrelevant to whether that doorknob is physically lost or damaged for purposes of insurance coverage); *DZ Jewelry*, *LLC* v. *Certain Underwriters at Lloyds London*, 525 F. Supp. 3d 793, 799–800 (S.D. Tex. 2021) (courts repeatedly have stated that "COVID-19 does not cause physical damage to property; it causes people to get sick" (internal quotation marks omitted)); *Uncork & Create*, *LLC* v. *Cincinnati Ins. Co.*, 498 F. Supp. 3d. 878, 884 (S.D. W. Va. 2020) (COVID-19 poses serious risk to people gathered in proximity to each other, but property is not physically damaged or rendered unusable or uninhabitable by presence of it), aff'd, 27 F.3d 929 (4th Cir. 2022); *Starr Surplus Lines Ins. Co.* v. *Eighth Judicial District Court*, 535 P.3d 254, 264 (Nev. 2023) ("SARS-CoV-2's virality in the air is evidence of harm imperiling people, not property"); *Huntington Ingalis Industries*, *Inc.* v. *Ace American Ins. Co.*, 287 A.3d 515, 541 (Vt. 2022) (Carroll, J., dissenting) (virus does not infect lightbulbs, desk or walls and these objects cannot develop COVID-19; virus infects and causes COVID-19 in humans).

[29] As we recently and repeatedly have recognized, "[i]t is axiomatic that, [a]s an intermediate appellate court, we are bound by Supreme Court precedent and are unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 214 Conn. App. 511, 522–23 n.10, 281 A.3d 501, cert. denied, 345 Conn. 967, 285 A.3d 736 (2022); see also *Lavette* v. *Stanley Black & Decker*, *Inc.*, 213 Conn. App. 463, 481, 278 A.3d 1072 (2022); *Onofrio* v. *Mineri*, 207 Conn. App. 630, 645 n.4, 263 A.3d 857 (2021).

[30] *Roundabout Theater Co.* v. *Continental Casualty Co.*, 302 App. Div. 2d 1, 751 N.Y.S.2d 4 (2002).

[31] See also *Mario Badescu Skin Care*, *Inc.* v. *Sentinel Ins. Co.*, *Ltd.*, Docket No. 22-0380-cv, 2023 WL 6567266, *1 (2d Cir. October 10, 2023) (Second Circuit and state courts of New York consistently and repeatedly have held under New York law that COVID-19 does not trigger insurance policy provisions that provide coverage for losses arising from direct physical loss or physical damage to covered property); *Stetson Real Estate*, *LLC* v. *Sentinel Ins. Co.*, *Ltd.*, Docket No. 22-1748, 2023 WL 6563870, *1 (2d Cir. October 10, 2023) (same and collecting cases); *147 First Realty*, *LLC* v. *Aspen American Ins. Co.*, Docket No. 22-220, 2023 WL 3014780, *1 (2d Cir. April 20, 2023) (Second Circuit, applying law of New York, has held that policy provisions establishing coverage for physical loss of or physical damage to property does not extend to claims for loss and expenses resulting from business suspension in response to COVID-19 related public health restrictions); *Connecticut Children's Medical Center* v. *Continental Casualty Co.*, *CNA Financial Corp.*, Docket No. 22-322, 2023 WL 2961738, *1 (2d Cir. April 17, 2023) (District Court properly dismissed complaint for failure to state claim as facts alleged failed to plausibly show direct physical loss or damage due to COVID-19 following our Supreme Court's analysis in *Connecticut Dermatology Group*, *PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 33, and *Hartford Fire Ins. Co.* v. *Moda*, *LLC*, supra, 346 Conn. 64); *ITT*, *Inc.* v. *Factory Mutual Ins. Co.*, Docket No. 22-1245, 2023 WL 1126772, *1 (2nd Cir. January 31, 2023) (noting that Connecticut had joined general consensus of state and federal courts holding that physical loss or damage requires physical damage or alteration to property and therefore District Court properly dismissed plaintiff's claim under all risk insurance policy because coverage was not triggered); *Kim-Chee*, *LLC* v. *Philadelphia Indemnity Ins. Co.*, Docket No. 21-1082-cv 2022 WL 258569, *1–2 (2d Cir.

January 28, 2022) (under New York law, direct physical loss unambiguously does not extend to mere loss of use of property where there has been no physical damage to property and no allegation that any part of building or anything inside of it was damaged to point of repair, replacement, or total loss).

[32] See *Legal Sea Foods, LLC* v. *Strathmore Ins. Co.*, 36 F.4th 29 (1st Cir. 2022); *SAS International, Ltd.* v. *General Star Indemnity Co.*, 36 F.4th 23 (1st Cir. 2022); *Verveine Corp.* v. *Strathmore Ins. Co.*, 489 Mass. 534, 184 N.E.3d 1266 (2022).

[33] See also *Wilson* v. *USI Ins. Service, LLC*, 57 F.4th 131, 141–44 (3rd Cir. 2023) (under Pennsylvania and New Jersey law, loss of use of property due to COVID-19 did not constitute direct physical loss of or damage to property to trigger insurance coverage). As noted by the Third Circuit, other United State Courts of Appeals have reached the same conclusion. Id., 143 n.6 (citing, inter alia, *Legal Sea Foods, LLC* v. *Strathmore Ins. Co.*, 36 F.4th 29 (1st Cir. 2022); *Uncork & Create, LLC* v. *Cincinnati Ins. Co.*, 27 F.4th 926 (4th Cir. 2022); *Terry Black's Barbeque, LLC.* v. *State Auto Mutual Ins. Co.*, 22 F.4th 450 (5th Cir. 2022); *Goodwill Industry of Central Oklahoma, Inc.* v. *Philadelphia Indemnity Ins. Co.*, 21 F.4th 704 (10th Cir. 2021); *Sandy's Point Dental, P.C.* v. *Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021); *MudPie, Inc.* v. *Travelers Casualty Ins. Co. of America*, 15 F.4th 885 (9th Cir. 2021); *Santo's Italian Café, LLC* v. *Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021); *Oral Surgeons, P.C.* v. *Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021)).

Furthermore, as the Louisiana Supreme Court noted in *Cajun Conti, LLC* v. *Certain Underwriters at Lloyd's, London*, 359 So. 3d 922 (La. 2023): "[N]umerous state supreme courts have reached a similar result when analyzing comparable policy language. E.g., [Neuro-Communication] [Services], Inc. v. Cincinnati Ins. Co., [171 Ohio 3d St. 606, 611, 219 N.E.2d 907 (2022)] (The definition of the term loss is clear: for coverage to be provided, there must be loss or damage to [c]overed [p]roperty that is physical in nature. Such loss or damage does not include a loss of the ability to use [c]overed [p]roperty for business purposes.); Sullivan [Management], LLC v. Fireman's Fund Ins. Co., [437 S.C. 587, 594–95, 879 S.E.2d 742] (2022) (Because neither the presence of the coronavirus nor the government order prohibiting indoor dining constitutes direct physical loss or damage, the policy's triggering language is not met.); Tapestry, Inc. v. Factory [Mutual] Ins. Co., [482 Md. 223, 252, 286 A.3d 1044] (2022) ([T]he presence of [c]oronavirus in the air and on surfaces at [the plaintiff's] properties did not cause physical loss or damage as that phrase is used in the [p]olicies.); Hill & Stout, PLLC v. [Mutual] of Enumclaw Ins. Co., 200 Wn. 2d 208, 212, 515 P.3d 525] (2022) (It is unreasonable to read direct physical loss of . . . property in a property insurance policy to include constructive loss of intended use of property. Such a loss is not physical.); Colectivo Coffee Roasters, Inc. v. [Society] Ins., [401 Wis. 2d 660, 672, 974 N.W.2d 442] (2022) ([T]he presence of COVID-19 does not constitute a physical loss of or damage to property because it does not alter the appearance, shape, color, structure, or other material dimension of the property.); Verveine Corp. v. Strathmore Ins. Co., [489 Mass. 534, 541, 184 N.E.3d 1266] (2022) (We conclude that no reasonable interpretation of direct physical loss of or damage to property supports the plaintiffs' claims.)."* (Emphasis added; internal quotation marks omitted.) *Cajun Conti, LLC* v. *Certain Underwriters at Lloyd's, London*, supra, 928–29.

We acknowledge that this reasoning has not been adopted *universally*. See, e.g., *Huntington Ingalis Industries, Inc.* v. *Ace American Ins. Co.*, 287 A.3d 515, 533–34 (Vt. 2022) (Vermont has extremely liberal notice-pleading standards and threshold plaintiff must cross to meet standard is exceedingly low and based on such standards; statement in complaint adequately alleged virus physically altered properly when it adhered to surface); see also *Marina Pacific Hotel and Suites, LLC* v. *Fireman's Fund Ins. Co.*, 81 Cal. App. 5th 96, 109, 296 Cal. Rptr. 3d 777 (2022) (determining plaintiff "unquestionably pleaded direct physical loss or damage to covered property" and recognizing this conclusion "is at odds with almost all (but not all) decisions" considering issue). We find these decisions unpersuasive because Connecticut is a fact pleading state. See *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 303 Conn. 213 n.7; *Godbout* v. *Attanasio*, 199 Conn. App. 88, 111–12, 234 A.3d 1031 (2020).

[34] See, e.g., *Sacramento Downtown Arena, LLC* v. *Factory Mutual Ins. Co.*, 637 F. Supp. 3d 865, 870 (E.D. Cal. 2022) (policy can reasonably be interpreted as defining presence of communicable disease as physical loss or damage); *Live Nation Entertainment, Inc.* v. *Factory Mutual Ins. Co.*, Docket No. LA CV21-00862 (JAK), 2022 WL 390712, *8 (C.D. Cal. February 3, 2022) (same).

[35] "It is axiomatic that a contract of insurance must be viewed in its entirety . . . ." (Internal quotation marks omitted.) *Lift-Up, Inc.* v. *Colony Ins. Co.*, 206 Conn. App. 855, 869, 261 A.3d 825 (2021).

[36] See, e.g., *Arnone* v. *Connecticut Light & Power*, 90 Conn. App. 188, 203–206, 878 A.2d 347 (2005) (discussing differences between motion to strike and motion for summary judgment).

[37] See *Kids Indoor Playground, Inc.* v. *Northfield Ins. Co.*, Docket No. 23-55076, 2023 WL 8542622, *1 (9th Cir. December 11, 2023) (policy's virus exclusion unambiguously barred coverage for business losses and damages allegedly sustained due to COVID-19 and shutdown orders); see also *Froedtert Health, Inc.* v. *Factory Mutual Ins. Co.*, 69 F.4th 466, 470 (7th Cir. 2023); *Goodwill Industries of Central Oklahoma, Inc.* v. *Philadelphia Indemnity Ins. Co.*, 21 F.4th 704, 713–14 (10th Cir. 2021); *Mashallah, Inc.* v. *West Bend Mutual Ins. Co.*, 20 F.4th 311, 320–22 (7th Cir. 2021); *Dr. Jeffrey Milton, DDS, Inc.* v. *Harford Casualty Ins. Co.*, 588 F. Supp. 3d 266, 273–74 (D. Conn. 2022); *Little Stars, LLC* v. *Sentinel Ins. Co., Ltd.*, 554 F. Supp. 3d 378, 384–86 (D. Conn. 2021); *Ralph Lauren Corp.* v. *Factory Mutual Ins. Co.*, Docket No. 20-10167 (SDW) (LDW), 2021 WL 1904739 (D. N.J. May 12, 2021); *LJ New Haven, LLC* v. *AmGUARD Ins. Co.*, 511 F. Supp. 3d 145, 151–56 (D. Conn. 2020). State cases include: *Coast Restaurant Group, Inc.* v. *Amguard Ins. Co.*, 90 Cal. App. 5th 332, 344–45, 307 Cal. Rptr. 3d 133 (Cal. App. 2023) (policy did not cover business loss or damage directly or indirectly caused by virus such as coronavirus); *American Rag Cie, LLC* v. *Harford Fire Ins. Co.*, Superior Court, judicial district of Hartford, Docket No. CV-22-6153983-S (August 1, 2023) (applying California law, virus exclusion barred any coverage for plaintiff's COVID-19 related losses); *Hill & Stout, PLLC* v. *Mutual of Enumclaw Ins. Co.*, 200 Wn. 2d 208, 229, 515 P.3d 525 (2022) (no issue of material fact that virus exclusion applied).

[38] The District Court in *One40 Beauty Lounge, LLC* v. *Sentinel Ins. Co., Ltd.*, supra, United States District Court, Docket No. 3:20-CV-00643 (KAD), set forth several cases. See *Cosmetic Laser, Inc.* v. *Twin City Fire Ins. Co.*, 554 F. Supp. 3d 389, 401–402 (2021) (finding identical virus exclusion unambiguous and rejecting argument that canons of construction are necessary to determine scope of exclusion, though noting that, even if canons applied, those argued by plaintiff do not change outcome); see also *Little Stars, LLC* v. *Sentinel Ins. Co., Ltd.*, 554 F. Supp. 3d 378, 385 (2021) (concluding that identical virus exclusion is unambiguous and precludes coverage for losses caused by COVID-19 virus); *CFIT Holding Corp.* v. *Twin City Fire Ins. Co.*, 548 F. Supp. 3d 701, 708 (2021) (same); *Kirkland Group, Inc.* v. *Sentinel Ins. Co., Ltd.*, Docket No. 3:20-cv-496-DPJ-FKB, 2021 WL 2772561, *2 (S.D. Miss. June 29, 2021) (same); *Arrowhead Health & Racquet Club, LLC* v. *Twin City Fire Ins. Co.*, Docket No. 1:20-cv-08968-NLH-KMW, 2021 WL 2525739, *5 (D. N.J. June 21, 2021) (same); *Garces* v. *Sentinel Ins. Co., Ltd.*, Docket No. 5:21-cv-00189-JWH-SPX, 2021 WL 2010357, *3 (C.D. Cal. May 18, 2021) (same); *Coffey & McKenzie, LLC* v. *Twin City Fire Ins. Co.*, Docket No. 2:20-cv-01671-BHH, 2021 WL 1310872, *3 (D. S.C. April 8, 2021) (same).

[39] One court has described the attempt to distinguish a virus from a communicable disease in this context as a "red herring." *Ralph Lauren Corp.* v. *Factory Mutual Ins. Co.*, Docket No. 20-10167 (SDW) (LDW), 2021 WL 1904739, *4 n.8 (D. N.J. May 12, 2021).

[40] In support of its claim, the plaintiff cites to *Thor Equities, LLC* v. *Factory Mutual Ins. Co.*, 531 F. Supp. 3d 802, 804–805 (S.D.N.Y. 2021), in which the District Court denied the defendant's motion for judgment on the pleadings pursuant to rule 12 (c) of the Federal Rules of Civil Procedure. The court concluded that the contamination exclusion was ambiguous and therefore denied the insurance company's motion. Id., 809. We join the other judicial decisions that determined that this decision to be inapposite or unpersuasive. See *Harvey B. Pats, M.D., P.A.* v. *Hartford Ins. Co.*, United States District Court, Docket No. 3:20CV00697 (SALM) (D. Conn. December 17, 2021); see also *Dana, Inc.* v. *Zurich American Ins. Co.*, Docket No. 21-4150, 2022 WL 2452381, *3 n.4 (6th Cir. July 6, 2022); *Ralph Lauren Corp.* v. *Factory Mutual Ins. Co.*, Docket No. 20-10167 (SDW) (LDW), 2021 WL 1904739, *4 n.8 (D. N.J. May 12, 2021).

Additionally, the Southern District Court of New York subsequently granted the defendant insurer's partial motion for summary judgment, concluding "as a matter of law, the presence of the COVID-19 virus does not qualify as damage to property, and [the plaintiff] has failed to satisfy the conditions for recovery under the [c]ommunicable [d]isease [p]rovisions." *Thor Equities, LLC* v. *Factory Mutual Ins. Co.*, Docket No. 20 Civ. 3380 (AT), 2023 WL 7928097, *3 (S.D.N.Y. November 16, 2023), appeal filed (2d Cir. December 21, 2023) (No. 23-8063).